**ROMAN CATHOLIC DIOCESE OF SPRINGFIELD IN ILLINOIS, a Trust, Daniel L. Ryan, Bishop, Successor Trustee, et al., Plaintiffs–Appellants,**

v.

**MARYLAND CASUALTY COMPANY, a foreign corporation, Defendant– Appellee,**

and

**TIG Insurance Company, a foreign corporation, and National Risk Retention Group, Inc., a foreign corporation, Defendants.**

No. 97–2482.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 31, 1998.

Decided March 17, 1998.

As Amended on Denial of Rehearing April 7, 1998.

---

Hugh J. Graham (argued), Dean W. Jackson, Graham & Graham, Springfield, IL, for Plaintiffs–Appellants.

Jill B. Berkeley, Schiff, Hardin & Waite, Chicago, IL, Joshua G. Vincent (argued), Peter C. Morse, D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, for Defendants–Appellees.

Before CUMMINGS, RIPPLE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

The Roman Catholic Diocese of Springfield, Illinois and the other appellants (collectively, "the Diocese") sought a declaratory judgment obligating their insurers, among them Maryland Casualty Company, to defend the Diocese in a state court action filed by the parents of children abused by a former parish priest. The district court granted Maryland Casualty judgment on the pleadings, reasoning that the injuries claimed by the parents did not occur during the period

of time that Maryland Casualty insured the Diocese. We reverse.

## I.

Maryland Casualty was the general liability insurer for the Diocese from December 1977 until December 1981. The primary liability policies in force during this period provided that Maryland would indemnify and defend the Diocese for claims arising from bodily injury and property damage caused by an "occurrence." "Bodily injury" included a "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." "Occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[1] Excess liability policies in effect between December 1978 and December 1981 defined their key terms—"personal injury" and "occurrence"—with comparable language.

From approximately 1978 through 1981, it is alleged, Joseph Havey, then the associate pastor at St. Agnes Parish and School (within the Diocese), sexually abused a number of boys entrusted to his supervision and guidance. In 1993, five of Havey's alleged victims, now adults, filed suit against him and the Diocese in Illinois state court seeking recompense for the abuse. *Doe, et al. v. Ryan, et al.*, No. 93 L 546 (Circuit Court Sangamon County). The trial court ultimately dismissed that suit with prejudice, concluding that it was barred by the statute of limitations. The Illinois appellate court affirmed the dismissal in an unpublished ruling, *Doe v. Ryan*, No. 4–95–0457 (Ill.App. 4th Dist. Dec. 15, 1995), and the Illinois Supreme Court denied the plaintiffs leave to appeal, *Doe v. Ryan*, 166 Ill.2d 537, 216 Ill.Dec. 2, 664 N.E.2d 639 (1996). In 1995, two other men claiming to have been abused by Havey each filed suit against Havey and the Diocese. *Green v. Ryan, et al.*, No. 95 L 157 (Circuit Court Sangamon County); *Black v. Ryan, et al.*, No. 95 L 158 (Circuit Court Sangamon County).

In May 1995, two weeks after the *Doe v. Ryan* suit was dismissed, the parents of two of the Doe plaintiffs, joined by the parents of the plaintiffs in the *Green* and *Black* actions, filed yet another action against Havey and the Diocese. *Ward, et al. v. Ryan, et al.*, No. 95 L 0343 (Circuit Court Sangamon County). The complaint in *Ward*, after detailing the abuse that Havey allegedly inflicted on the children, alleges that because Havey admonished the children to never disclose the abuse to anyone, the plaintiff parents remained ignorant of what Havey had done until on or after May 29, 1993. *Ward* Complaint at 6 ¶ 29. The complaint makes the following allegations as to the respective injuries of the minors and their parents:

30. As a direct result of Defendant Joseph Havey's conduct, the minor children have suffered and will continue to suffer severe and medically diagnosable emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, psychological injury, loss of enjoyment of life, wage loss and deprivation of earning capacity.

31. As a direct result of the aforesaid conduct by Defendant Joseph Havey and disclosure of same to the Plaintiffs, all Plaintiffs have suffered extreme emotional pain and distress; all plaintiffs have experienced shock, impaired mental and physical health, nervousness, and mental anguish. Plaintiffs' faith has been diminished and their personal relationship with their God has been abridged. Plaintiffs have lost faith and confidence in the Catholic Church. Plaintiffs have had to contend with constant and severe emotional stress.

*Ward* Complaint at 6. Finally, the complaint alleges that the plaintiffs had entrusted their children to the Catholic Church for religious and educational instruction and had made financial contributions to St. Agnes Parish to

---

1. We shall assume that under Illinois law, the cause or causes of the injuries at issue in this appeal amount to the kind of accidental "occurrence" covered by the Maryland policies. *See U.S. Fidelity & Guar. Co. v. Open Sesame Child Care Ctr.*, 819 F.Supp. 756, 760–61 (N.D.Ill. 1993); *see also Woods v. Foster*, 884 F.Supp. 1169, 1177–78 (N.D.Ill.1995). The issue is not raised here.

promote that instruction; consequently, "a fiduciary relationship and an implied and/or quasi-contractual relationship between the Plaintiffs and the Defendants were created." *Ward* Complaint at 6 ¶ 32. The first four counts of the complaint seek to hold Havey liable on various theories. The remaining eight counts seek to hold the parish and the Diocese liable under theories of vicarious liability (including respondeat superior), negligent supervision, breach of fiduciary duty, and breach of an implied and/or quasi-contract.

The Diocese tendered the defense of the *Ward* suit to Maryland Casualty and also to TIG Insurance Company and National Catholic Risk Retention Group, Inc. ("NCRRG"), which had primary and excess coverage policies, respectively, in effect with the Diocese in May 1993, when the *Ward* plaintiffs allegedly learned of their children's abuse. All three of the insurers refused to assume responsibility for the Diocese's defense. Maryland asserted that although the children were allegedly abused between 1978 and 1981, when Maryland insured the Diocese, their parents were not injured until 1993, well after the Maryland policies had expired. TIG and NCRRG, on the other hand, asserted that although the parents may have been injured in 1993 when they insured the Diocese, the source of that injury was the abuse to the plaintiffs' children, which occurred during the term of Maryland's coverage.

Invoking the Declaratory Judgment Act, 28 U.S.C. § 2201, the Diocese filed this suit in 1996, alleging that either Maryland on the one hand or TIG and NCRRG on the other are obligated to defend the Diocese in the *Ward* suit. Maryland sought judgment on the pleadings, arguing that the *Ward* complaint comprehended no injury to the parents prior to 1993, when they finally learned of the abuse and suffered the resulting emotional distress.

The district court agreed that Maryland was entitled to judgment on the pleadings. The court noted first that Maryland could only be held liable for an injury which occurred during the period of coverage. Amended Order at 8. As the policy terms made clear, Maryland was responsible only for "occurrences"—that is, accidents or repeated exposure to conditions—resulting in injury *during the policy period. Id.* at 7–8. As the district court read the *Ward* complaint, however, the parents were seeking to recover for injuries that did not occur during the period of Maryland's coverage:

> Although the *Ward* plaintiffs allege that an injury was sustained by their children during the Maryland policy period, the injury for which they are seeking recovery is the injury to them, which is alleged to have occurred on May 29, 1993, when they found out about the alleged sexual abuse. The claim appears to have been designed to circumvent the statute of limitations that caused the children's suit to be dismissed. By claiming an injury on May 29, 1993, the *Ward* plaintiffs' suit, filed on May 24, 1995, falls within the two-year statute of limitation. This injury occurred long after the Maryland policy expired in 1981.

Amended Order at 8–9. The court found unpersuasive the Diocese's effort to analogize the *Ward* suit to asbestos litigation and other suits concerning injuries that do not manifest until years after exposure to a harmful agent. The parents in *Ward* were not complaining of a truly latent injury, the court explained. Rather, the cause and manifestation of the parents' injuries occurred simultaneously on May 29, 1993, when they learned that their children had been harmed. Amended Order at 9–10. "That is when they were 'exposed' and that is when they were injured." Amended Order at 10. Finally, the court rejected the Diocese's assertion that Maryland was estopped from denying coverage because it had neither defended under a reservation of rights nor filed its own suit for declaratory judgment but instead had forced the Diocese to sue. The court noted that the estoppel argument applied only in cases in which the insurer in fact had a duty to defend and breached that duty. Amended Order at 10, citing *Industrial Coatings Group, Inc. v. American Motorists Ins. Co.,* 276 Ill.App.3d 799, 213 Ill.Dec. 317, 324, 658 N.E.2d 1338, 1345 (1995) and *Sears, Roebuck & Co. v. Seneca Ins. Co.,* 254 Ill.App.3d 686, 194 Ill.Dec. 57, 62, 627 N.E.2d 173, 178

(1993). The court subsequently denied the Diocese's motion to reconsider.

## II.

Our review of the district court's decision granting judgment on the pleadings is de novo. *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995) (collecting cases). Resolution of the case pursuant to FED.R.CIV.P. 12(c)—like dismissal pursuant to Rule 12(b)(6)—is appropriate only if it is clear that the plaintiff can prove no set of facts on which relief could be granted. *GATX Leasing*, 64 F.3d at 1114, quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989); *see also Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982). Illinois law, which the parties agree controls this case, treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily. *Hurst–Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir.1995), quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 189 Ill.Dec. 756, 760, 620 N.E.2d 1073, 1077 (1993); *see also, e.g.*, *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334 (7th Cir.1992); *Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 832 F.2d 1037 (7th Cir.1987); *Ohio Cas. Ins. Co. v. Bazzi Constr. Co.*, 815 F.2d 1146 (7th Cir.1987).

To determine whether the insurance company owes its insured a defense, the court must simply compare the allegations of the underlying complaint against the insured to the pertinent provisions of the insurance policy. *Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 211 Ill.Dec. 459, 464, 655 N.E.2d 842, 847 (1995); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 698–99, 607 N.E.2d 1204, 1212 (1992); *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 692, 514 N.E.2d 150, 158 (1987). If the complaint against the insured alleges facts that fall or potentially fall within the coverage of the policy, then the insurance company is bound to supply a defense. *LaphamHickey*, 211 Ill.Dec. at 464, 655 N.E.2d

at 847; *Outboard Marine*, 180 Ill.Dec. at 698–99, 607 N.E.2d at 1212; *Raymark Indus.*, 112 Ill.Dec. at 692, 514 N.E.2d at 158. If, on the other hand, it is clear from the face of the underlying complaint that the allegations do not even potentially fall within the scope of the policy, then the insured must mount its own defense. *Outboard Marine*, 180 Ill.Dec. at 698–99, 607 N.E.2d at 1212; *Raymark Indus.*, 112 Ill.Dec. at 692, 514 N.E.2d at 158. Of course, the court must construe the complaint against the insured liberally, *Hurst–Rosche Eng'rs*, 51 F.3d at 1342, and any doubts as to the insurer's duty must be resolved in favor of the insured, *id.*; *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991). Moreover, the possibility that not all of the injuries complained of in the complaint may be covered does not obviate the duty to defend; so long as at least some injuries potentially fall within the scope of the policy, the insurer must defend the insured. *See Hurst–Rosche Eng'rs*, 51 F.3d at 1342; *Maryland Cas. Co. v. Peppers*, 64 Ill.2d 187, 193–94, 355 N.E.2d 24, 28 (1976); *Bedoya v. Illinois Founders Ins. Co.*, 228 Ill.Dec. 59, 688 N.E.2d 757, 761 (Ill.App.1997), citing *Western Cas. & Sur. Co. v. Adams County*, 179 Ill.App.3d 752, 128 Ill.Dec. 621, 623, 534 N.E.2d 1066, 1068 (1989).

Before we proceed any further, we must first address the Diocese's argument that because Maryland has refused the Diocese a defense without filing its own suit for a declaratory judgment relieving it of that obligation, Maryland is estopped from denying coverage and must pay any and all legal fees that the Diocese has incurred and will incur in both federal and state court. (Diocese Br. 35–36.) That contention is frivolous. We have repeatedly noted that under Illinois law, an insurer has three choices when its insured is sued on a claim that the insurance company believes is beyond the policy's coverage: (1) it may seek a declaratory judgment relieving it of the obligation to defend; (2) it may defend the insured under a reservation of rights; or (3) it may do neither and risk a subsequent finding that it breached the duty to defend, a finding that would

require it to indemnify the insured for any liability the insured incurs in the underlying action. *Maneikis v. St. Paul Ins. Co. of Ill.,* 655 F.2d 818, 821–22 (7th Cir.1981) (collecting Illinois cases); *see also Tews Funeral Home,* 832 F.2d at 1042; *Hartford Accident & Indem. Co. v. Gulf Ins. Co.,* 776 F.2d 1380, 1382 (7th Cir.1985); *Playboy Enters., Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425, 427–28 n. 1 (7th Cir.1985); *Insurance Co. of Ill. v. Markogiannakis,* 188 Ill.App.3d 643, 136 Ill.Dec. 307, 312, 544 N.E.2d 1082, 1087 (1989). Neither we nor the Illinois courts have ever suggested that an insurer who neither seeks a declaratory judgment nor defends its insured under a reservation of rights is automatically estopped from denying a duty to defend when its insured brings a declaratory suit in an effort to establish that duty. The estoppel that the insurer risks when it elects to do nothing is an estoppel to deny coverage if it turns out that the insurance company did have an obligation to defend and breached that obligation. *See Hartford Accident & Indem.,* 776 F.2d at 1382–83. Obviously, a court asked to decide whether the insurer committed such a breach still must determine whether there was in fact a duty to defend the insured in the first instance, *Playboy Enters.,* 769 F.2d at 427; *Maneikis,* 655 F.2d at 822; *Industrial Coatings Group, Inc. v. American Motorists Ins. Co., supra,* 213 Ill. Dec. 317, 658 N.E.2d at 1345 (collecting cases); *Bedoya,* 228 Ill.Dec. at 65, 688 N.E.2d at 763 (distinguishing *JG Indus., Inc. v. National Union Fire Ins. Co. of Pittsburgh,* 218 Ill.App.3d 1061, 161 Ill.Dec. 613, 615, 578 N.E.2d 1259, 1261 (1991)), and that is the very question we are asked to answer here. The mere fact that Maryland decided to put the Diocese to the bother of seeking a declaratory judgment rather than doing so itself does not estop the insurance company from arguing that it has no duty to defend. *See Industrial Coatings Group,* 213 Ill.Dec. 317, 658 N.E.2d at 1346 (collecting cases). We see such suits, brought by insureds, on a routine basis.

◼ We turn to the task at hand. The terms of the Maryland policies, which we have discussed above, quite clearly limit coverage to personal injuries that occur during the policy period. We shall assume, as the parties do, that if the parents of the abused children suffered injuries, they would at least potentially be the kinds of "personal injuries" for which Maryland insured the Diocese. The sole question that we must answer is whether the *Ward* complaint, given the liberal construction that it is due in this context, comprehends any injury to the parents during the period of time that Maryland insured the Diocese.

The language of the complaint certainly envisions some distinct harm to the parents that occurred no earlier than May 1993, long after Maryland had ceased being the Diocese's insurer. Notably, the complaint attributes the identified injuries (including emotional distress, impaired mental and physical health, a diminution in faith, and a loss of confidence in the Catholic Church) not solely to the actions of Joseph Havey, but also to the "*disclosure* of same to the Plaintiffs." *Ward* Complaint ¶ 31. Indeed, it is entirely plausible to construe the complaint as focused upon injuries that the parents allegedly incurred only after they finally learned in 1993 what had happened to their children. As the district court suggested, the dismissal of *Doe v. Ryan* on statute of limitations grounds shortly before the *Ward* suit was filed may explain that focus. Emotional distress and other trauma resulting from the 1993 disclosure would not fall within the scope of Maryland's policies, we are inclined to agree. We say that not simply because the injuries did not manifest until after the policies expired, but because there was no identifiable injury of that kind to the parents—latent or otherwise—until they were told in 1993 what their priest had purportedly done to their children. The parents' loss of faith and confidence in the Catholic Church is an apt example: that loss presumably would never have occurred had the parents remained ignorant of Havey's acts. So some of the injuries for which the parents seek recovery may not be injuries that implicate the Maryland policies. But a judgment declaring that Maryland has no duty to defend the Diocese is appropriate only if we can say with confidence that no injuries comprehended by the complaint

would potentially trigger coverage. *See Hurst–Rosche Eng'rs,* 51 F.3d at 1342; *Peppers,* 355 N.E.2d at 28; *Bedoya,* 228 Ill.Dec. at 65, 688 N.E.2d at 763.

Reading the complaint generously, it is easy to imagine that the parents of the abused children were in fact injured long before 1993, and within the period of Maryland's coverage, but that the parents simply remained in the dark as to the source of their injuries until then. As we have noted, the complaint identifies a variety of harms that the children suffered as a result of the abuse: "severe and medically diagnosable emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, psychological injury, loss of enjoyment of life, wage loss and deprivation of earning capacity." *Ward* Complaint ¶ 30. Surely some of these injuries occurred during the period of Maryland's coverage. Common sense suggests that these injuries could in turn have resulted in concrete, identifiable harm to the parents within the same period. If the children required medical and psychological treatment at that time, for example, the parents would have borne the costs of that care. If the children became withdrawn as a result of the abuse, their relationships with their parents almost certainly suffered. And so on. *See Doe by Doe v. Montessori School of Lake Forest,* 287 Ill.App.3d 289, 223 Ill.Dec. 74, 84, 678 N.E.2d 1082, 1092 (1997); *but see also Doe v. United States,* 976 F.2d 1071, 1082–83 (7th Cir.1992), *cert. denied,* 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993); *Dralle v. Ruder,* 124 Ill.2d 61, 124 Ill.Dec. 389, 529 N.E.2d 209 (1988).[2] We are given no reason not to believe that these types of injuries, in contrast to those stemming from the 1993 disclosure, would fall within the coverage of the Maryland policies. The only question, then, is whether such injuries are beyond the scope of the *Ward* complaint. They are not. Although the identified injuries are attributed in part to the 1993 revelations, as we have noted, they are also attributed directly to the abuse by Havey (*Ward* Complaint ¶ 31), and that allegation leaves the door open to claims for injuries that pre-date the expiration of the Maryland policies. More-over, nothing in the complaint suggests that the injuries expressly identified were meant to be an exhaustive list. Thus, to whatever degree the complaint may focus on injuries occurring in 1993 and later, we do not think it rules out earlier injuries. As the Illinois courts have observed:

> The complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action.

*Western Cas. & Sur. Co., supra,* 128 Ill.Dec. at 623, 534 N.E.2d at 1068, citing *International Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.,* 168 Ill.App.3d 361, 119 Ill.Dec. 96, 106, 522 N.E.2d 758, 768 (1988); *accord State St. Bank & Trust Co. of Quincy, Ill. v. INA Ins. Co. of Ill.,* 207 Ill.App.3d 961, 153 Ill.Dec. 327, 331, 567 N.E.2d 42, 46 (1991); *Wilkin Insulation, supra,* 140 Ill.Dec. at 910, 550 N.E.2d at 1035.

### III.

Only if we were confident that no allegations in the *Ward* complaint were even potentially within the scope of the Maryland policies could we sustain the judgment below and declare that Maryland has no obligation to defend the Diocese. Although some of the injuries alleged in the *Ward* litigation postdate the coverage of the Maryland policies, the allegations of the complaint are also consistent with claims for injuries that may have occurred within the policy period. We are therefore constrained to REVERSE the judgment in favor of Maryland and REMAND with directions to enter judgment in favor of the appellants as to Maryland's obligation to defend the appellants. The parties shall bear their own costs on appeal.

2. Of course, we do not comment on the merit of  any legal claims founded on such injuries.