(No. 74673.—

CRUM AND FORSTER MANAGERS CORPORATION *et al.*, Appellants, v. RESOLUTION TRUST COR-PORATION, as Receiver for Mid-State Savings and Loan Association, *et al.*, Appellees.

*Opinion filed September 23, 1993.*

John F. Bramfeld, of Phebus, Tummelson, Bryan & Knox, of Urbana, and Edward F. Ruberry, Jeffrey A.

Goldwater and James A. Lupo, Jr., of Bollinger, Ruberry & Garvey, of Chicago, for appellants.

Ann S. Duross, Colleen B. Bombardier and Maria Beatrice Valdez, of Washington, D.C., and William A. Spence and Brian P. Norton, of Chicago, for appellee Resolution Trust Corporation.

Richard T. West, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellees Joseph W. Corley and JoAnn Corley.

Charles L. Palmer and John B. Alsterda, of Flynn, Palmer & Tague, of Champaign, for appellee Donald L. Whitsitt.

JUSTICE BILANDIC delivered the opinion of the court:

This appeal involves an insurance coverage dispute between the plaintiff-insurers and the defendant-insureds. The plaintiff-insurers, Crum and Forster Managers Corporation (Crum & Forster), Illinois Insurance Exchange, Inc., and LWB Syndicate, Inc. (collectively insurers), instituted this declaratory judgment action against the defendant-insureds, Mid-State Savings and Loan Realty, Inc., Mid-State Appraising, Inc., d/b/a Mid-State Realty, Inc. (Mid-State), Joseph and JoAnn Corley (the Corleys), Donald Whitsitt (Whitsitt) (collectively insureds), and Dependable Realty, Inc. (Dependable), seeking a determination of their duty to defend and indemnify the insureds in an underlying action (Dependable Realty v. Mid-State Realty *et al.* (Cir. Ct. Champaign Co.), No. 86—L—864) brought against the insureds by Dependable (Dependable action). While the Dependable action was pending, Mid-State was placed in receivership and the Resolution Trust Corporation (RTC) succeeded to Mid-State's rights under

the insurance policies at issue and is, therefore, also a defendant in the instant declaratory judgment action.

At the trial level, the plaintiff-insurers moved for summary judgment and for judgment on the pleadings with respect to both their duties to defend and indemnify the insureds. Thereafter, the defendant-insureds filed cross-motions for summary judgment on the issue of the insurers' duty to defend them in the Dependable action but contended that any determination concerning the duty to indemnify would be premature because liability in the Dependable action had not yet been resolved.

The trial court denied the insurers' motions for judgment and granted the insureds' cross-motions for summary judgment, finding that the insurers had a duty to defend the insureds because the claims alleged in the Dependable complaint were at least potentially within the insurance policies' coverage. The trial court also found that any determination concerning the duty to indemnify issue would be premature until liability in the Dependable action had been resolved.

On appeal, a divided appellate court affirmed the trial court's grant of summary judgment in favor of the insureds, finding that the insurers had a duty to defend the insureds in the Dependable action. (236 Ill. App. 3d 718.) The appellate court also found that any determination concerning the issue of indemnification was premature until the underlying Dependable litigation was resolved. We granted the plaintiff-insurers' petition for leave to appeal (134 Ill. 2d R. 315).

In this appeal, the issues which we are called upon to determine are whether: (1) the courts below properly granted summary judgment in favor of the insureds on the duty to defend issue; (2) the insurers are prevented from asserting the defense of noncoverage under the policies; and (3) a declaration concerning the issue of indemnification would be premature at this point in time.

The facts of this case are as follows. In March 1986, the insurers issued "Real Estate Agents and Brokers Professional Liability Insurance Polic[ies]" to the insureds for the period of February 1986 through February 1987. In June 1986, Dependable filed an action against the insureds, which was later amended. Dependable's second-amended complaint alleged, *inter alia*, that Joseph Corley was employed by Dependable as its real estate sales manager from December 1982 through December 1984 when he left Dependable and joined Mid-State as a real estate agent. The Dependable complaint also alleged that JoAnn Corley was employed by Dependable as a real estate agent from February 1983 until late 1984 or early 1985 when she too left Dependable to join Mid-State as a real estate agent.

Dependable's complaint contained numerous counts, including: (1) interference with prospective economic advantage; (2) common law tortious interference with contractual relationships; (3) breach of and inducing the breach of a fiduciary duty by an officer and/or director; (4) common law unfair competition; (5) unfair competition and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121½, pars. 261 through 272); (6) common law fraud; (7) theft of trade secrets; and (8) various conspiracy counts related to the foregoing counts.

The Dependable complaint essentially alleged that, while employed by Dependable, the Corleys, especially Joseph Corley, formed Mid-State as a competitor of Dependable, induced others on Dependable's sales staff to leave Dependable and join Mid-State's sales staff, refrained from and induced others to refrain from listing properties with Dependable and instead list them with Mid-State, learned and then stole Dependable's confidential sales techniques for the benefit of Mid-State, stole Dependable's

clients for Mid-State's benefit, and then left Dependable to join Mid-State.

When Dependable filed the underlying complaint, the insureds retained counsel who in turn tendered the defense of the Dependable action to the plaintiff-insurers. Initially, the insurers accepted the tender of defense without reservation. Six months later, however, the insurers sent the insureds a reservation of rights letter indicating that they accepted the tender of defense but were not waiving any rights or defenses under the policy. The insureds then filed a declaratory judgment action (Mid-State action), seeking a declaration that the reservation of rights was untimely and that the insurers were, therefore, estopped from reserving any rights or policy defenses. The trial court granted summary judgment in favor of the insureds but the appellate court reversed, finding that the insurers' delay in reserving their rights did not prejudice the insureds. Therefore, the appellate court held that the insurers were not estopped from asserting policy defenses. (*Mid-State Savings & Loan Association v. Illinois Insurance Exchange, Inc.* (1988), 175 Ill. App. 3d 265, 271-72.) Subsequently, the insurers filed the instant declaratory judgment action, seeking a declaration that they have no duty to defend or indemnify the insureds in the underlying Dependable action.

## OPINION

Initially, we note that this appeal was taken from the trial court's orders granting summary judgment in favor of the insureds on the duty to defend issue and denying the insurers' motion for summary judgment. In an appeal from the grant of summary judgment, we conduct a *de novo* review. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.) Although summary judgment is a drastic means of disposing of litigation, it is an appropriate measure in cases where there are

no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp.*, 154 Ill. 2d at 102.

## POLICY CONSTRUCTION

The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment. (See *Outboard Marine Corp.*, 154 Ill. 2d at 108; *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 58.) In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement. (*Outboard Marine Corp.*, 154 Ill. 2d at 108; *De Los Reyes v. Travelers Insurance Cos.* (1990), 135 Ill. 2d 353, 358.) To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract. (*Outboard Marine Corp.*, 154 Ill. 2d at 108, 115; see *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378.) If the words in the policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1.) The court will not search for ambiguity where there is none. *Schnackenberg*, 88 Ill. 2d at 5.

The professional liability policies before us provide in relevant part:

> "(1) Professional Liability and Claims Made Clause: To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally responsible to pay in damages as

*a result of CLAIMS FIRST MADE AGAINST THE IN-SURED* DURING THE POLICY PERIOD:

> (a) *by reason of any act, error or omission in professional services rendered or that should have been rendered* by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and *arising out of the conduct of the Insured's profession as a real estate agent or real estate broker* including the following related activities for real estate: consultation, appraisal, property management, property management consultation or notary public, ***." (Emphasis added.)

In construing the scope of coverage afforded by the policies before us, we initially consider the type of policy for which the parties have contracted. The policies at issue in this case are professional liability policies. This type of policy is similar to medical and legal malpractice insurance policies. In the nonmedical, nonlegal professions, this type of policy is commonly referred to as an error-and-omissions policy. (See 7A J. Appleman & J. Appleman, Insurance Law & Practice §4504.01, at 309 (rev. 1979).) This type of policy provides:

> "a specialized and limited type of coverage as compared to comprehensive insurance; it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors *inherent in the practice of the profession.*" (Emphasis added.) (7A J. Appleman & J. Appleman, Insurance Law & Practice §4504.01, at 310 (rev. 1979).)

Another authority on insurance law has described this type of policy similarly:

> "Errors and omissions policies form the equivalent to malpractice insurance for occupations other than those in the legal and medical fields. Where such a policy stated it provided coverage for the 'negligent acts, errors or omissions' of the insured, coverage would exist for the insured's negligent performance of its contract. *But coverage is generally extended to a particular class of risks and is not a*

*substitute for liability coverage.*" (Emphasis added.) 11 Couch on Insurance 2d §44:396, at 573-74 (rev. ed. 1982).

Under the policies at issue, the risks undertaken by the insurers are those which are inherent in the practice of the real estate profession. Although there may be a myriad of risks to which one performing services in a real estate professional capacity may be exposed, covered risks are only those which inherently arise out of the rendering of the real estate services.

The policies at issue are claims-made policies. According to the plain terms of the policies, the claims must be made "*by reason of* any act, error or omission in [real estate] professional services rendered." (Emphasis added.) The phrase "by reason of" has been defined as "[b]ecause of," "[b]y means, acts, or instrumentality of." (Black's Law Dictionary 201 (6th ed. 1990).) We construe this phrase to mean that the claims made against the insureds by the underlying plaintiff must be made *because of* an act, error, or omission in the insured's performance or rendering of *real estate services*. There must be a direct, causal relationship between the insured's performance of real estate services and the underlying claims made against the insured in order for the claims to be covered under these policies at issue.

## DUTY TO DEFEND

It is now well-established law that, in determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy. (*Outboard Marine Corp.*, 154 Ill. 2d at 108.) If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action. (*Outboard Marine Corp.*, 154 Ill. 2d at 108.) The insurer's duty to

defend is much broader than its duty to indemnify its insured. *Outboard Marine Corp.*, 154 Ill. 2d at 125.

Turning to the allegations in the Dependable complaint, it is clear from the face of the complaint that Dependable's claims made against the insureds do not arise or result because of the insureds' performance of real estate services. Essentially, Dependable's complaint alleges that the insureds committed intentional business torts and engaged in unfair competitive practices. The risk of conducting one's business in an unfair and tortious manner is certainly not one inherent in the practice of the real estate profession. Although the complaint contains allegations which refer to real estate matters such as listings and commissions, these are allegations which go to the injury or damage done to Dependable and which resulted from the insureds' allegedly tortious conduct. These allegations do not form the genesis from which the claims made by Dependable first arose. Dependable's claims are not made against the insureds because the insureds somehow incorrectly performed real estate services such as the listing of properties. Dependable's claims are made against the insureds and have arisen *because of* the insureds' allegedly tortious conduct and unfair business practices which are ancillary to the performance of real estate services. In a layperson's terms, the claims are made against the insureds because they allegedly stole Dependable's secret sales techniques, listings, employees, and clients prior to doing anything with them in a real estate professional capacity.

In our judgment, to construe these error-and-omissions policies to cover the claims made in Dependable's complaint, as the insureds urge us to do, would expand the coverage beyond what was contracted for by the parties. The insureds' interpretation of these policies could not have been reasonably contemplated by the parties when they entered into these insurance contracts. In comparing

the coverage intended by the parties with the facts alleged in the Dependable complaint, we find that such facts do not fall potentially within the coverage afforded by the policies before us. Therefore, the insurers have no duty to defend the insureds in the Dependable action.

The insureds, however, contend that the insurers should be barred from asserting that the policy does not provide coverage for the claims made by Dependable. They argue that the insurers either have waived or abandoned or should be barred from asserting their right to claim noncoverage as a policy defense under the principles of *res judicata.*

In the previous declaratory judgment action filed by Mid-State, the insureds sought a declaration that the insurers' reservation of rights letter was untimely and that the insurers were, therefore, estopped from asserting any policy defenses. In response, the insurers filed an answer which contained an affirmative defense of noncoverage. In its decision, the appellate court stated:

> "On appeal only one issue is raised. That issue is whether [the insurers] are estopped from denying coverage by virtue of retaining attorneys who entered their appearance on behalf of plaintiffs in the underlying common law cause of action and who assumed the defense of that case.
>
> * * *
>
> In short, there is no factual basis from which the trial court could find prejudice. Mere delay in raising the issue of noncoverage [in the reservation of rights letter] alone is not sufficient to establish prejudice by clear, concise, and unequivocal evidence. [Citation.] *** Therefore ***, we hereby reverse the order of the trial court *** and hereby enter judgment in favor of defendant insurance companies, to wit: Defendant insurance companies are not estopped from interposing any policy coverage defenses with regard to the underlying action between Dependable Realty and plaintiffs herein." *Mid-State Savings & Loan Association v.*

*Illinois Insurance Exchange, Inc.* (1988), 175 Ill. App. 3d 265, 270-72.

Waiver arises from an affirmative act, is consensual, and consists of the intentional relinquishment of a known right. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 499.) A waiver may be express or implied, arising from acts, words, conduct, or knowledge of the insurer. (*Brochu,* 105 Ill. 2d at 499.) In the case at bar, the insureds argue that because the insurers raised noncoverage as an affirmative defense in the Mid-State action and later failed to pursue it in that action, they have waived or abandoned their right to assert noncoverage in this action presently before us. This argument is meritless. Initially, the Mid-State action was disposed of by the trial court's grant of summary judgment. All that the insurers could do following this resolution was to file an appeal, which they did. Thereafter, the appellate court reversed and entered summary judgment in favor of the insurers. We fail to see when and in what court the insurers could have litigated their noncoverage defense in the previous action. Under these facts, there certainly was no "intentional relinquishment of a known right" and we reject the insureds' argument on this issue.

The insureds also contend that the insurers should be barred from asserting noncoverage in this action under *res judicata* principles. Under *res judicata,* a final judgment rendered on the merits by a court of competent jurisdiction is conclusive to the rights of the parties and bars subsequent actions involving the same claims and demands by the same parties or their privies. (*People ex rel. Burris v. Progressive Land Developers, Inc.* (1992), 151 Ill. 2d 285, 294.) The "essential elements of *res judicata* are: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies." (*Progressive Land Developers, Inc.,* 151 Ill. 2d at 294.) " 'If the same facts

are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted and *res judicata* bars the latter action.' " *Progressive Land Developers, Inc.*, 151 Ill. 2d at 295, quoting *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 157.

We find that the second element necessary for the operation of *res judicata,* identity of cause of action, is not met in this case. As the appellate court noted in the appeal from the previous declaratory action brought by Mid-State, the sole issue raised was whether the insurers were estopped from denying coverage by their actions prior to their reservation of rights. (*Mid-State Savings & Loan Association*, 175 Ill. App. 3d at 270.) The appellate court also specifically noted that "[t]he [insureds] have made no claim that the policy itself provides coverage, but have instead complained that the actions of the [insurers] in delaying the reservation of rights should estop the insurance companies from denying coverage pursuant to the policy." (*Mid-State Savings & Loan Association*, 175 Ill. App. 3d at 270.) The issue in the Mid-State action was an issue of estoppel, the resolution of which turned on whether the insureds had been prejudiced. Accordingly, the facts and evidence in that action centered around possible prejudice to the insureds. The instant case, however, involves the determination of coverage and the insurers' duties to its insureds. Accordingly, the facts and evidence necessary in this case center around the policy language and the allegations in the Dependable complaint. Therefore, we find that there is no identity of causes of action between the two declaratory judgment actions and we reject the insureds' contentions that *res judicata* bars the insurers from asserting noncoverage in the case before us.

## DUTY TO INDEMNIFY

The insureds contend that any determination concern-

ing the insurers' duty to indemnify would be premature at this point in time because liability in the Dependable action has not yet been resolved. Both the circuit and appellate courts agreed with this contention. It is true that this court has stated this principle before. (*Outboard Marine Corp.*, 154 Ill. 2d at 127; *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73.) This principle, however, is only operative in cases where the court has determined that the insurer's duty to defend its insured has arisen. (See *Outboard Marine Corp.*, 154 Ill. 2d 90; *Wilkin*, 144 Ill. 2d 64.) This is so because the duty to defend is broader that the duty to indemnify and arises even if the facts alleged in the underlying complaint fall potentially within the policy's coverage. (*Outboard Marine Corp.*, 154 Ill. 2d at 125.) The duty to indemnify arises only if the facts alleged *actually* fall within coverage. (*Outboard Marine Corp.*, 154 Ill. 2d at 128.) In cases such as the instant case where no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise. Clearly, where there is no duty to defend, there will be no duty to indemnify and we find that the plaintiff-insurers have no duty to defend or indemnify the insureds in this case.

Accordingly, for the reasons stated above, we reverse the judgment of the appellate and circuit courts and remand this cause to the circuit court with direction that summary judgment be entered in favor of the plaintiff-insurers.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded with directions.*