ZURICH INSURANCE COMPANY, Plaintiff-Appellee, v. CARUS COR-
PORATION, Defendant-Appellant and Counterplaintiff-Appellant (Zurich
Insurance Company *et al.*, Counterdefendants-Appellees).

First District (1st Division)   No. 1—96—0885

Opinion filed August 25, 1997.—Rehearing denied October 15, 1997.

Mauck, Bellande & Cheely (Mark Robert Sargis, of counsel), and Latham
& Watkins (Kevin M. Murphy, of counsel), both of Chicago, for appellant.

Bates, Meckler, Bulger & Tilson, of Chicago (Steven D. Pearson and Dina
L. Brantman, of counsel), for appellee Zurich Insurance Company.

Querrey & Harrow, Ltd., of Chicago (Michael Resis, Timothy J. Fagan,
and Victor J. Piekarski, of counsel), for appellee Continental Insurance
Company.

Keck, Mahin & Cate, of Chicago (Robin R. Lunn, John S. Vishneski III,
and David J. Poirier, of counsel), for *amicus curiae* Illinois Manufacturers
Association.

JUSTICE BUCKLEY delivered the opinion of the court:
This case is a declaratory judgment action in which the parties
seek a determination as to whether Zurich Insurance Company (Zur-
ich), American Guarantee and Liability Insurance Company (Ameri-
can), and Continental Insurance Company (Continental) must reim-
burse Carus Corporation (Carus), under general liability policies the
insurers issued to Carus, for expenses incurred investigating possible
contamination. The circuit court ruled that the insurers have no
duty to defend or indemnify in the absence of a lawsuit brought
against Carus. Carus now appeals.

Since 1915, Carus has owned and operated a chemical manufacturing facility in La Salle, Illinois, through its division Carus Chemical Company. Carus purchased a series of general liability policies from Zurich and American covering the period from 1970 through 1984, and from Continental covering the period from June 6, 1985, to September 1, 1985. Each policy contained the following provision:

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

Coverage A. bodily injury

Coverage B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suits against the insured seeking damages ***."

Pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S.C. § 9601 *et seq.* (1994)), Carus was placed on a list of waste disposal sites known as the Comprehensive Environmental Response, Compensation, and Liability Information System, in August 1990, because it had operated a chemical facility on the same property for an extended period of time. CERCLA and its Illinois counterpart, the Illinois Environmental Protection Act (415 ILCS 5/1 *et seq.* (West 1994)), impose liability on owners and operators of facilities that release hazardous substances into the environment.

In May 1991, the Illinois Environmental Protection Agency (IEPA), in agreement with the United States Environmental Protection Agency (USEPA), conducted a preliminary assessment of the Carus chemical facility (the Carus Chemical action). The preliminary assessment report recommended that a "Screening Site Inspection" (SSI) be conducted to determine if there is any environmental contamination on the site. In November 1991, the IEPA conducted the SSI. In May 1992, the SSI report was released, showing the presence of hazardous substances in the soil and groundwater in and around the facility.

Carus notified its insurers of the SSI results in October 1992. Continental denied coverage; Zurich and American acknowledged receipt of the claim, but they neither admitted nor denied coverage.

In December 1992, the final SSI report was released. The report indicated that contaminants in the soil and groundwater were sufficient to put Carus on the USEPA's "National Priorities List" (NPL) of sites targeted for cleanup. In an effort to avoid being placed on the NPL, Carus petitioned the IEPA to proceed under its site remediation program (the program). See 415 ILCS 5/58 *et seq.* (West 1996).

This program provides participants with "expeditious alternatives for the review of site investigation and remedial activities." 415 ILCS 5/58(4) (West 1996).

After making a payment of $5,000, Carus was accepted into the program. The program required Carus to conduct a remedial investigation and feasibility study, consistent with the mandates of CERCLA, under the supervision of the IEPA. The IEPA then would use the results of those studies to determine the remedial action necessary for the site to comply with CERCLA and other applicable laws.

In October 1993, after acceptance into the program, Carus received notice that the IEPA was preparing to conduct an SSI on property formerly owned by the Matthiessen & Hegeler Zinc Company that is adjacent to the Carus Chemical facility and is now partially owned by Carus. The SSI occurred in December 1993. In July 1994, Carus notified Zurich, American, and Continental of the IEPA's investigation of the Matthiessen & Hegeler property (the M&H action) as well as the status of the Carus Chemical action. At that point, all three carriers denied coverage in both actions.

In November 1994, the IEPA notified Carus that the SSI on the M&H property had revealed the presence of hazardous substances. Carus notified its insurers of these results the following month.

On January 31, 1995, Zurich filed this action in the chancery division of the circuit court of Cook County seeking a declaratory judgment that it has no duty to defend or indemnify Carus in the absence of a lawsuit. Carus filed counterclaims against Zurich, American, and Continental seeking declaratory judgments that the insurers are required to defend and indemnify Carus in the Carus Chemical action and in the M&H action. All parties filed motions for summary judgment, and on January 31, 1996, the circuit court granted the insurers' motions and denied Carus' motion. Carus filed its timely notice of appeal on March 1, 1996.

The sole issue in this appeal is whether Zurich, American, and Continental are required to indemnify Carus for expenses incurred while participating in the IEPA's site remediation program.

This case is clearly controlled by the supreme court's decision in *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520 (1995). In *Lapham-Hickey*, Lapham-Hickey Steel Corporation purchased an insurance policy from Protection Mutual Insurance Company (Protection) that covered "all risks of physical loss or damage" (166 Ill. 2d at 523) to certain Lapham-Hickey property and required Protection "to defend any suit against the Insured alleging liability for such damage" (166 Ill. 2d at 528). Two years later,

Lapham-Hickey received notice that the USEPA was planning an investigation of one of the facilities covered in the policy. (The facility was located in Minnesota, but Illinois law applied because the policy was issued and delivered in Illinois.) Several months later, Lapham-Hickey was notified that the Minnesota Pollution Control Agency (MPCA) had taken over the investigation. Lapham-Hickey responded by entering into an agreement whereby it would voluntarily conduct the investigation itself and the MPCA would issue a "no-action" letter stating that it had made no determination of whether Lapham-Hickey was responsible for any contamination to the soil or groundwater at the facility. Lapham-Hickey's subsequent investigation of the facility confirmed the existence of contamination. Lapham-Hickey then filed a declaratory judgment action against Protection, alleging that Protection had a duty to reimburse Lapham-Hickey for the costs of the investigation. *Lapham-Hickey*, 166 Ill. 2d at 522-28.

The court held that, under the terms of the policy, Protection had a duty to defend only when a suit was brought against Lapham-Hickey. *Lapham-Hickey*, 166 Ill. 2d at 532. Because the policy did not define the word "suit," it had to be given its ordinary meaning, which is "a proceeding in a court of law." *Lapham-Hickey*, 166 Ill. 2d at 531. The court ruled that neither the initial notice from the USEPA nor the "no-action" letter issued by the MPCA initiated a suit and, therefore, Protection had no duty to reimburse Lapham-Hickey for the costs of its investigation. *Lapham-Hickey*, 166 Ill. 2d at 533.

The facts in *Lapham-Hickey* that were critical to the outcome of that case are present in this case as well. The expenses for which Carus seeks reimbursement were incurred voluntarily. As in *Lapham-Hickey*, each of the policies at issue in this case provides that "the company shall have the right and duty to defend any *suits* against the insured seeking damages." (Emphasis added.) None of the environmental agencies that took any part in this matter initiated a "proceeding in a court of law." *Lapham-Hickey*, 166 Ill. 2d at 531. Therefore, no "suit" was ever brought against Carus, and the carriers had no duty to defend Carus.

Carus maintains that even if there is no duty to defend, the carriers are under a duty to indemnify that requires them to reimburse Carus. The purported source of this duty to indemnify is the policy language that provides that "the Company will pay all sums which the insured shall become legally obligated to pay as damages because of *** property damage." However, "where there is no duty to defend, there will be no duty to indemnify." *Crum & Forster Management Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993). As discussed above, the insurers in this case had no duty to defend

because no suit was brought against Carus. Therefore, the insurers also had no duty to indemnify. *Crum & Foster*, 156 Ill. 2d at 398.

Moreover, this action does not seek a declaration as to whether the insurers are liable for the cost of cleaning up contaminated property. The issue in this case is whether the insurers must reimburse Carus for the cost of hiring consultants and voluntarily conducting its own investigation through the IEPA's site remediation program. Carus never became "legally obligated to pay" these costs. No document Carus ever received in this matter asserted such an obligation, and Carus even admits that it initiated its involvement in the program voluntarily by petitioning the IEPA.

Furthermore, the SSI reports on the Carus Chemical and the M&H sites do not impose liability. They provide conclusions of tests conducted in the investigation of the sites, but as in *Lapham-Hickey*, "these documents by themselves are not complaints and do not impose liability." *Lapham-Hickey*, 166 Ill. 2d at 533.

Carus' reliance on *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992), is misplaced. The *Outboard Marine* case merely holds that the word "damages," as used in a general liability policy, "connotes money one must expend to remedy an injury for which he or she is responsible." *Outboard Marine*, 154 Ill. 2d at 116. Any lawsuit seeking to impose liability for such an injury triggers a duty to defend "regardless of whether that liability is equitable or legal in nature." *Outboard Marine*, 154 Ill. 2d at 117. Therefore, the court held that actions seeking injunctive relief were "suits seeking damages," and the insurer had a duty to defend. *Outboard Marine*, 154 Ill. 2d at 117.

However, nothing in the *Outboard Marine* case imposes any duty on a general liability insurer in the absence of a lawsuit. The rule coming out of *Outboard Marine* and *Lapham-Hickey* is clear: an insurer's duty to defend and indemnify is triggered by a suit against the insured, and in the absence of a lawsuit, no such duty exists. Since no suit was brought against Carus, the insurers had no duty to defend or indemnify.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'BRIEN and GALLAGHER, JJ., concur.