# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Selective Insurance Co. of South Carolina v. Cherrytree Cos., 2013 IL App (3d) 120959**

---

Appellate Court
Caption

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,
Plaintiff and Counterdefendant-Appellee, v. CHERRYTREE
COMPANIES, INC., d/b/a Macon General Contractors, Defendant and
Counterplaintiff-Appellant.

District & No.

Third District
Docket No. 3-12-0959

Filed

November 4, 2013

Held

(*Note: This syllabus
constitutes no part of
the opinion of the court
but has been prepared
by the Reporter of
Decisions for the
convenience of the
reader.*)

In an action arising from a dispute as to whether plaintiff insurer had an
obligation to indemnify defendant insured under the policy defendant
purchased from plaintiff which provided commercial general liability
coverage and umbrella liability coverage with respect to the defective
grain storage facilities defendant constructed, the trial court erred in
dismissing defendant's counterclaims alleging that plaintiff breached its
contractual duties and acted in bad faith by denying coverage on the
ground that no "suit" was filed, since the indemnification provision of the
policy did not require the filing of a "suit" before defendant could seek
indemnification for the damages defendant agreed to pay the client for
whom the facilities were constructed.

Decision Under
Review

Appeal from the Circuit Court of Bureau County, No. 11-MR-32; the
Hon. Marc P. Bernabei, Judge, presiding.

Judgment

Reversed and remanded.

Counsel on
Appeal

Mark P. Standa (argued), of Mark P. Standa, P.C., of Lake Forest, for appellant.

Brian A. O'Gallagher (argued) and Kristina M. Beck, both of Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, of Chicago, for appellee.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice Schmidt specially concurred, with opinion.

**OPINION**

¶ 1    The plaintiff and counterdefendant-appellee, Selective Insurance Company of South Carolina (Selective), filed a complaint for declaratory judgment against the defendant and counterplaintiff-appellant, Cherrytree Companies, Inc., d/b/a Macon General Contractors (Cherrytree), which requested the circuit court to rule on whether the insurance policy Cherrytree had with Selective provided coverage for problems Cherrytree had with a grain storage facility it had built for another company in Fairfield, Nebraska. Along with its answer, Cherrytree filed two counterclaims, alleging that Selective breached its contract with Cherrytree and that Selective acted in bad faith in denying coverage for the Fairfield incident and another incident with a grain storage facility in Chester, Nebraska. After a hearing, the circuit court dismissed Cherrytree's counterclaims with prejudice on the pleadings. Later, the court denied Cherrytree's motion to reconsider and granted Cherrytree's motion for a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), thereby allowing Cherrytree to take this appeal. On appeal, Cherrytree argues that the court erred when it dismissed the counterclaims with prejudice. We reverse and remand for further proceedings.

¶ 2                                          FACTS
¶ 3    On September 14, 2011, Selective filed a complaint for declaratory judgment and other relief against Cherrytree, which Selective insured under a policy that contained commercial general liability (CGL) coverage and umbrella liability coverage. The complaint alleged that in March 2010, Cherrytree contracted with AGP Grain Marketing, LLC, to construct a grain storage facility in Fairfield, Nebraska. Cherrytree had completed 99% of the construction by October 26, 2010, when five to six trusses in the storage facility had sunk approximately one to two feet and the concrete walls in the center of the storage facility had bowed outward. Selective received notice of this problem on October 26, 2010, with a more detailed explanation given on November 4, 2010. Selective began investigating the incident in mid-

November 2010 and issued a letter to Cherrytree in March 2011 that stated Selective did not believe the policy covered the problem with the storage facility. Selective stated that it was denying coverage because: (1) the problem with the storage facility did not constitute an "occurrence" under the policy; (2) the "your work" and "your product" exclusions precluded coverage; and (3) the problem with the storage facility did not constitute "property damage" under the policy.

¶ 4        Under the subject policy, the CGL coverage section stated, in relevant part:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result."

¶ 5        The CGL coverage section defined "suit" as:

"[A] civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. 'Suit' includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."

¶ 6        The umbrella liability coverage section of the policy stated, in relevant part:

"We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other 'suit' seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance does not apply. At our discretion, we may investigate any 'occurrence' or offense that may involve this insurance and settle any resultant claim or 'suit', for which we have the duty to defend."

¶ 7        The umbrella liability coverage section's definition of "suit" was identical to the definition contained in the CGL coverage section, except that subsection "b." read, "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the 'underlying insurer's' consent."

¶ 8        According to the complaint, in June 2011, counsel for Cherrytree sent a letter to Selective

in which counsel stated that Cherrytree had reached a settlement with AGP "in order to avoid costly litigation and bond claims." In part, Cherrytree had agreed "to pay AGP for various property damage and consequential damages." The complaint alleged that Cherrytree had requested Selective to indemnify it for amounts it paid or incurred as a result of the problem with the storage facility. Selective's complaint sought rulings that: (1) the amounts for which Cherrytree sought indemnification were not covered under the CGL portion of the policy; and (2) the amounts for which Cherrytree sought indemnification were not covered under the umbrella liability portion of the policy. Alternatively, the complaint sought rulings that: (1) Selective had no duty to indemnify because Cherrytree did not establish that it was legally obligated to pay damages; (2) the policy did not cover voluntary payments; and (3) Cherrytree breached its contract with Selective by refusing to pay outstanding premiums on a different policy.

¶ 9　　On October 17, 2011, Cherrytree filed its answer and counterclaims. In its statement of the case, Cherrytree listed three subcontractors it used to construct the storage facility and stated:

> "On October 26, 2010, the roof of the flat grain storage building owned by AGP in Fairfield, Nebraska collapsed, the walls continued to move outward near the center of the building and the hooped trusses had additional failures, resulting in a large volume of grain spewing out of the building side walls and damage to AGP property, including the grain stored at the facility, as well as the aeration, conveyor and electrical systems, all of which were purchased or obtained directly by AGP."

Cherrytree alleged that the damages were estimated to exceed $1.5 million.

¶ 10　　Cherrytree also alleged that it participated in the construction of another grain storage facility in Chester, Nebraska, which also suffered a roof collapse. Cherrytree stated that it informed Selective of the problem with the Chester storage facility, but that Selective "refused to even acknowledge the claim and failed to reserve any rights on the Chester claim."

¶ 11　　The two counterclaims that Cherrytree set forth were for: (1) breach of contract; and (2) damages under section 155 of the Illinois Insurance Code (the Insurance Code) (215 ILCS 5/155 (West 2010)). With regard to the first counterclaim, Cherrytree alleged that "SELECTIVE breached its obligations under the subject policy by its failure and refusal to provide coverage or indemnify CHERRYTREE for losses sustained as a result of the AGP claim and Chester claim, and failure to properly investigate or respond to those claims." With regard to the second counterclaim, Cherrytree alleged that Selective acted in bad faith when it denied coverage for the problem with the Fairfield storage facility and when it ignored the claim Cherrytree made for the problem with the Chester storage facility.

¶ 12　　On December 15, 2011, Selective filed several motions, including a motion to dismiss Cherrytree's counterclaims. Selective argued, *inter alia*, that Cherrytree's breach of contract counterclaim should be dismissed because: (1) the proper action to determine a coverage dispute is a declaratory judgment action, not a breach of contract action; (2) the policy required a "suit" to be filed before coverage would apply, and no "suit" had been filed against Cherrytree; and (3) regarding the problem with the Chester storage facility, Selective

was still investigating the problem and had not decided whether coverage applied to that problem yet. In that argument section, Selective mentioned section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)) but it did not specify whether the argument was being made pursuant to section 2-615 or to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2010)). In a later pleading, Selective stated that the first of its three arguments on this issue was being brought pursuant to section 2-615 and the other two arguments were being brought pursuant to section 2-619.

¶ 13    Selective also argued that Cherrytree's second counterclaim should be dismissed because Selective's handling of the claim had not been vexatious and unreasonable. Specifically, Selective argued that: (1) a *bona fide* coverage dispute existed, thereby making a damage award under section 155 of the Insurance Code inappropriate; (2) generally, CGL policies do not provide coverage for defective workmanship; and (3) the policy required a "suit" to be filed before coverage would apply, and no "suit" had been filed against Cherrytree. In that argument section, Selective stated that it was making its argument pursuant to section 2-619 of the Code of Civil Procedure.

¶ 14    On February 24, 2012, the circuit court held a hearing on Selective's motion to dismiss Cherrytree's counterclaims and on other motions filed by the parties. After hearing arguments, the circuit court issued an oral ruling. Initially, the court determined that Cherrytree's counterclaims could be dismissed without prejudice for several reasons, although the court stated that it would also address Selective's claim that the counterclaims should be dismissed because no underlying suit against Cherrytree had been filed regarding the problems with the Fairfield and the Chester storage facilities, as this reason could result in a dismissal with prejudice. The court thoroughly discussed relevant case law in issuing its decision, concluding that "there is no published Illinois reviewing court decision that was cited by the parties or revealed by the court's own research that holds that there is a duty to indemnify absent a suit in a duty-to-defend policy." The court placed repeated emphasis on the fact that the CGL policy at issue contained both duty to defend and duty to indemnify language and used this fact to analogize this case to certain cases and distinguish it from others. Specifically, the court ruled that it was persuaded by two cases, *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520 (1995), and the First District's decision in *Zurich Insurance Co. v. Carus Corp.*, 293 Ill. App. 3d 906 (1997), which "both held a suit is necessary because of the duty-to-defend language before the duty to indemnify is triggered." In so ruling, the court stated that it disagreed with two federal court cases, *Sokol & Co. v. Atlantic Mutual Insurance Co.*, 430 F.3d 417 (7th Cir. 2005), and *Keystone Consolidated Industries, Inc. v. Employers Insurance Co. of Wausau*, 456 F.3d 758 (7th Cir. 2006), in which the United States Seventh Circuit Court of Appeals interpreted Illinois state law as not requiring a "suit" to trigger an insurance company's duty to indemnify. At the close of its discussion, the court ruled that because no suit had been filed, Cherrytree's counterclaims were dismissed with prejudice.

¶ 15    On October 31, 2012, the circuit court denied Cherrytree's motion to reconsider, granted Cherrytree's motion for a Rule 304(a) finding, and stayed all other matters pending the outcome of Cherrytree's appeal from the court's dismissal order.

¶ 16                                          ANALYSIS

¶ 17    On appeal, Cherrytree argues that the circuit court erred when it dismissed its counterclaims with prejudice. Specifically, Cherrytree asserts that the subject policy did not require a "suit" to trigger coverage and that relevant case law supports such a conclusion.

¶ 18    A motion to dismiss brought pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)) admits the legal sufficiency of the complaint it attacks and asserts a defense that allegedly defeats the complaint's allegations. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. "When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them [citation], but a court cannot accept as true mere conclusions unsupported by specific facts." *Id.* We review a section 2-619 dismissal under the *de novo* standard. *Id.*

¶ 19    The interpretation of an insurance policy's provisions presents a question of law. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). When we construe policy provisions, our goal is to ascertain the intent of the parties to the policy and give effect to that intent. *Id.* To do so, we must view the policy as a whole and " 'take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.' " *Id.* (quoting *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997)).

¶ 20    The narrow question before this court is whether the policy in this case required the filing of a "suit" before Cherrytree could seek indemnification for the damages it agreed to pay to AGP. In the CGL coverage section, the policy stated, in relevant part:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result."

Similarly, in the umbrella liability section, the policy stated, in relevant part:

"We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other 'suit' seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance does not apply. At our discretion, we may investigate any 'occurrence' or offense that may involve this insurance and settle any resultant claim or 'suit', for which we have the duty to defend."

¶ 21    In analyzing this language, the circuit court in this case discussed several cases at length. The first of these cases was *Lapham-Hickey*. The circuit court found that the supreme court's decision in *Lapham-Hickey* provided guidance for the resolution of the issue in this case.

¶ 22    In *Lapham-Hickey*, the insured filed a declaratory judgment action seeking to recover defense costs it incurred from an investigation it conducted into environmental contamination on its property. *Lapham-Hickey*, 166 Ill. 2d at 522. The insured conducted the investigation voluntarily after consulting with the Minnesota Pollution Control Agency. *Id.* at 524-25. The insured's all-risks policy covered, in relevant part, the following property on any location covered by the policy:

> " '[P]ersonal property of others in the custody of the Insured to the extent of the Insured's legal liability for physical loss or damage of the type insured against by this Policy. [The insurer] further agrees to defend any suit against the Insured alleging liability for such damage, destruction or loss and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but this company may without prejudice, make such an investigation, negotiation and settlement of any claim or suit as the Company deems expedient.' " *Id.* at 528.

"Suit" was not defined in the policy, so the supreme court gave the term its plain and ordinary meaning as an action involving court proceedings. *Id.* at 532. Because no "suit" had been filed against the insured, the supreme court held that the insurance company had no duty to defend. *Id.* The supreme court further concluded that the insured could not recover the costs it incurred from the investigation of its property. *Id.* at 533.

¶ 23    The circuit court in this case placed great emphasis on the *Lapham-Hickey* decision due to the supreme court's statement that "[the insurer] can avoid its duty to defend *and* to reimburse [the insured] for the defense costs if the language of the policy unambiguously shows that [the insurer] did not contract to defend the actions [the insured] undertook in response to letters and a proposed consent decree issued from the [Environmental Protection Agency] and the [Minnesota Pollution Control Agency]." (Emphasis added.) *Id.* at 529. Even though it was only the duty to indemnify that was at issue in *Lapham-Hickey*, it appears to this court that the first sentence of the above-quoted policy provision would not cover the type of reimbursement the insured was seeking in *Lapham-Hickey* anyway, as that sentence referred to the "personal property of others" and not to damage to the insured's property caused by a third party (*id.* at 528). In addition, the type of policy in *Lapham-Hickey* and its specific language were very different from the CGL policy and its specific language at issue in this case. For these reasons, we find that *Lapham-Hickey* does not provide guidance for the resolution of the issue in this case.

¶ 24    The circuit court in this case also placed great emphasis on the First District's decision in *Carus* in arriving at its decision to dismiss Cherrytree's counterclaims with prejudice. In *Carus*, the insurer filed a declaratory judgment action seeking a ruling that it had no duty to defend or indemnify for expenses the insured incurred while investigating potential pollution remediation. *Carus*, 293 Ill. App. 3d at 908. The insured participated in a program that required it "to conduct a remedial investigation and feasibility study" to determine what further action would be necessary for the site to come into compliance with pollution control

laws. *Id.* The policy at issue contained the following relevant language:

> " 'The [insurer] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
>
> > Coverage A. bodily injury
> >
> > Coverage B. property damage to which this insurance applies, caused by an occurrence, and the [insurer] shall have the right and duty to defend any suits against the insured seeking damages ***.' " *Id.* at 907.

The insurer claimed that because no "suit" had been filed, it had no duty to defend or indemnify the insured. *Id.* at 908. Although it recognized that the issue presented by the case pertained to the insurer's duty to indemnify, the First District proceeded to discuss the duty to defend, which was absent because no "suit" had been filed. *Id.* at 908-09. Then, the First District concluded that the insurer also had no duty to indemnify the insured. *Id.* at 909-10. In support of this conclusion, the First District cited to *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384 (1993), for a general proposition that " 'where there is no duty to defend, there will be no duty to indemnify.' " *Carus*, 293 Ill. App. 3d at 909 (citing *Crum*, 156 Ill. 2d at 398).[1]

¶ 25    We determine upon our review of the *Carus* and *Crum* decisions that neither justifies a dismissal with prejudice of Cherrytree's counterclaims. First, our examination of *Crum* shows that *Carus*'s reliance on that decision was misplaced. In *Crum*, the insurers filed a declaratory judgment action claiming that they had no duty to defend or indemnify the insureds in an underlying action that had been filed against the insureds. *Crum*, 156 Ill. 2d at 387. The supreme court held that the insurers had no duty to defend the insureds in the underlying suit because the facts alleged in the underlying suit's complaint "do not fall potentially within the coverage afforded by the policies." *Id.* at 395. The supreme court also held that the insurers had no duty to indemnify the insureds for any liability that might arise from the underlying suit. *Id.* at 398. However, it is important to note the context in which the supreme court's holding on the duty to indemnify arose:

> "In cases such as the instant case where no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise. Clearly, where there is no duty to defend, there will be no duty to indemnify and we find that the plaintiff-insurers have no duty to defend or indemnify the insureds in this case." (Emphases in original.) *Id.*

From this context, it is clear that *Crum* does not stand for a general proposition that when an insurer has no duty to defend, then it will not have a duty to indemnify. Rather, *Crum*'s holding was fact-specific–the insurers had no duty to indemnify the insureds for any liability they might incur from an underlying action when: (1) the policy contained both duty-to-defend and duty-to-indemnify provisions; and (2) the facts alleged in the underlying action's

---

[1]The First District also ruled that there was no duty to indemnify because the costs associated with conducting the voluntary investigation of the property were not costs that the insured became " 'legally obligated to pay.' " *Carus*, 293 Ill. App. 3d at 910.

-8-

complaint did not even potentially trigger the insurers' duty to defend as defined by the policy. *Id.* at 398. Accordingly, we determine that the *Carus* court misstated and misconstrued the law when it cited *Crum* for that general proposition.

¶ 26 Second, this court has previously stated its belief that *Carus* was incorrectly decided. In *Central Illinois Light Co. v. Home Insurance Co.* (*CILCO I*), 342 Ill. App. 3d 940, 958 (2003), we expressed our disagreement with the *Carus* court's statement that case law had "established as a rule that an insurer's duty to defend and indemnify is triggered by a suit against the insured, and in the absence of a lawsuit, no such duty exists." *Id.* While it is true that the policies in *CILCO I* were indemnity-only policies (*id.* at 949), our statement in *CILCO I* is directly relevant to the disposition of the issue presented by this case.

¶ 27 Third, two decisions of the United States Seventh Circuit Court of Appeals that interpreted Illinois insurance law had pointed out the aforementioned flaw in the *Carus* decision. In both *Sokol* and *Keystone*, the Seventh Circuit discussed the contextual nature of the *Crum* holding and noted that *Carus* was an anomaly because no other Illinois cases relied on *Crum* for a general proposition that if the insurer has no duty to defend, then it has no duty to indemnify. *Sokol*, 430 F.3d at 421 n.1; *Keystone*, 456 F.3d at 762 n.2.

¶ 28 In fact, the *Sokol* and *Keystone* decisions are particularly instructive on the issue presented by this case. In *Sokol*, one company had supplied peanut butter packets to another company for inclusion in the latter company's cookie mix. *Sokol*, 430 F.3d at 419. The latter company discovered that the peanut butter had gone bad, replaced the peanut butter at its own expense, then sought reimbursement from the former company for the replacement costs. *Id.* The former company then filed a claim with its CGL insurer. *Id.* After the insurer denied coverage, the former company paid the latter company's claim and then sought indemnification from the insurer. *Id.* The insurer once again denied coverage. *Id.* The relevant policy language stated:

> " 'We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.' " *Id.* at 420.

¶ 29 The federal district court granted summary judgment for the insurer, citing *Crum* for the same general proposition for which *Carus* cited *Crum*. *Id.* at 419. The Seventh Circuit held that the district court improperly relied on *Crum* because *Crum* did not stand for a general proposition that when there is no duty to defend, there will be no duty to indemnify. *Id.* at 421. The Seventh Circuit emphasized that the case before it was an indemnification action, not a duty-to-defend action, and that "the coverage grant pertaining to indemnification does not contain the same limiting language requiring the existence of a 'suit.' " *Id.* Further, it stated that "[t]he two duties of the insurer–defense and indemnification–are distinct; while the duty to indemnify may sometimes nest inside the duty to defend, that will not always be the case." *Id.* For these reasons, the Seventh Circuit ruled that the insurer's duty to indemnify was not limited to "suits." *Id.* at 422. While the Seventh Circuit ultimately affirmed the

district court's grant of summary judgment on grounds that are not at issue in this appeal (*id.* at 422-23), its ruling on whether a "suit" was required to trigger the duty to indemnify is directly on point to the issue presented by this case.

¶ 30 Like in the policy at issue in *Sokol*, the word "suit" does not appear in the first sentences of either the CGL or the umbrella liability sections of the policy in this case, which are the sentences that refer to Selective's duty to indemnify. Rather, "suit" appears in the second sentences of these sections, which are the sentences that refer to Selective's duty to defend. As the Seventh Circuit stated in *Sokol* under very similar circumstances, "[t]he present dispute, however, is not about the insurer's duty to defend. This is a claim for indemnification coverage, and the coverage grant pertaining to indemnification does not contain the same limiting language requiring the existence of a 'suit.' " *Id.* at 421. Without that limiting language, we hold that the indemnification provision in the policy in this case did not require the filing of a "suit" before Cherrytree could seek indemnification for the damages it agreed to pay to AGP. See *id.* at 422.

¶ 31 The Seventh Circuit's decision in *Keystone* provides further support for our holding. Similar to what they said in *Sokol*, the Seventh Circuit in *Keystone* noted the proper context of the *Crum* decision and also cited to our supreme court's decision in *Central Illinois Light Co. v. Home Insurance Co.* (*CILCO II*), 213 Ill. 2d 141, 155-62 (2004), for its discussion of indemnity-only policies that did not include any "suit" language, including its conclusion that "the policy language, standing alone, does not require the insured to have been served as the defendant or respondent in an adversarial proceeding before the duty to indemnify arises" (*id.* at 156). *Keystone*, 456 F.3d at 762. The Seventh Circuit concluded, "it appears fairly well settled that under Illinois law, an insurance policy may entitle the insured to indemnification for claims that do not arise from the resolution of a lawsuit, so long as those claims satisfy any requirements set forth in the relevant provisions of the policy." *Id.* at 761-62. We are in accord with the Seventh Circuit's assessment of Illinois law in this area, including the context in which it cited the *CILCO II* decision.

¶ 32 For the foregoing reasons, we hold that the circuit court erred when it dismissed Cherrytree's counterclaims with prejudice. We emphasize that our ruling in this case is a narrow ruling and is not to be construed as determinative of any other aspect of the case, including whether the counterclaims could be dismissed with or without prejudice on other grounds, whether the policy does in fact provide coverage for any part of the settlement Cherrytree negotiated with AGP, whether any exclusions would apply, and any other unresolved issues such as the open motion for summary judgment filed by Selective.

¶ 33                                           CONCLUSION

¶ 34 For the foregoing reasons, we reverse the judgment of the circuit court of Bureau County and remand the cause for further proceedings.

¶ 35 Reversed and remanded.

¶ 36    JUSTICE SCHMIDT, specially concurring.

¶ 37    I concur with the majority, but write separately to point out that I believe the dispositive factor is Cherrytree alleges that it settled with AGP only after Selective denied coverage. Had Cherrytree settled with AGP in the absence of a denial of coverage by Selective, we would have an entirely different animal. I want to make plain that this case should not be construed by anyone as standing for the proposition that an insured under a liability policy can go out and settle with some tort claimant without prior knowledge and consent of the insurer, and then demand indemnity from the insurer. That proposition would create a moral hazard too attractive for many con artists to ignore. It is also prohibited by policy conditions. This policy, like virtually every liability policy issued in this state, provides:

> "Section IV–Conditions:
>
> * * *
>
> 4. No insureds will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent."

¶ 38    However, where as here, the insurer denies coverage, the insured is entitled to do what he or she can to cut his or her losses, and need not wait until suit is filed to once again make demand on the insurer. That condition (IV(4)) is not at issue in this case. The supreme court's pronouncement in *Crum & Forster* was never intended to suggest that a liability insurer's duties arise only after suit is filed against its insured.