19 F.3d 1436
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
EMPLOYERS REINSURANCE CORPORATION,
Plaintiff/Counter-defendant/Appellant/Cross-Appellee,
v.
WILKINS-LOWE & COMPANY, INCORPORATED, James R. Wilkins and
David B. Lowe,
Defendants/Counter-
plaintiffs/Appellees/Cross-Appellants.
 Nos. 93-2219, 93-2273.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 10, 1993.
Decided March 14, 1994.
 
 Before POSNER, Chief Judge, and FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 James Wilkins and David Lowe were insurance brokers in Illinois and were the primary operating officers of an insurance agency, Wilkins-Lowe & Company, Incorporated. Employers Reinsurance Corporation ("Employers Reinsurance") issued an errors and omissions policy covering the corporation as well as Lowe and Wilkins individually. With the hope of attracting more insurance customers, Lowe and Wilkins allowed James Hall to operate a securities business under the name "Wilkins-Lowe." In return for use of what he considered a good name, Hall promised to allow the insurance agency to use his customer list to solicit insurance. But Hall apparently converted security customer funds for his own use. Hall's insurer, National Union Fire Insurance Company ("National Union") sued Wilkins-Lowe & Company as well as James Wilkins and David Lowe individually (collectively referred to hereinafter as Wilkins-Lowe) alleging that they were liable to National Union for the wrongful conversion of securities funds by James Hall, because they allowed James Hall to use the name "Wilkins-Lowe" in his securities business. Wilkins-Lowe tendered the defense of the National Union lawsuit to Employers Reinsurance. Employers Reinsurance disclaimed coverage and refused to defend the litigation. Employers Reinsurance then instituted a declaratory judgment action seeking a declaration that it did not have a duty to defend or indemnify Wilkins-Lowe. The district court held on summary judgment that Employers Reinsurance had a duty to defend but did not have a duty to indemnify. Both parties appeal. We affirm the district court's holding that Employers Reinsurance does not have a duty to indemnify and reverse its holding that Employers Reinsurance has a duty to defend.
 
 I. Background
 
 2
 Wilkins-Lowe is engaged in the business of selling property, casualty and life insurance. James Hall apparently decided that the "Wilkins-Lowe" name carried with it a certain amount of good will. Accordingly, James Hall approached Wilkins-Lowe and advised it that he would like to use the name "Wilkins-Lowe" in his business of selling and brokering securities. Wilkins-Lowe and James Hall reached an agreement under which James Hall could use the name "Wilkins-Lowe" for the sole purpose of selling and dealing in securities and in return James Hall would provide Wilkins-Lowe with a list of securities customers. Wilkins-Lowe planned to use this list to solicit insurance customers.
 
 
 3
 Under this agreement, James Hall began selling securities as Wilkins-Lowe Investments Services, Inc. Through Wilkins-Lowe Investments Services Inc., James Hall purchased and sold securities on behalf of First Affiliated Securities. While doing so, James Hall allegedly converted certain customer funds of First Affiliated for his own use. First Affiliated's insurer and subrogee National Union filed suit against the Wilkins-Lowe insurance company seeking recovery for the converted funds.
 
 
 4
 Wilkins-Lowe tendered defense of the case to its insurer Employers Reinsurance. Wilkins-Lowe was insured by Employers Reinsurance under a "Professional Liability Insurance Policy For Insurance Agents & Brokers." This policy provided the following coverage:
 
 
 5
 COVERAGE. The Corporation does hereby agree to pay on behalf of the Insured such loss in excess of the applicable deductible stated and within the limit of liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable, arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker, and including activities as an insurance consultant or notary public, as respects claims first made against the Insured during the policy period.
 
 
 6
 Employers Reinsurance disclaimed coverage under this "errors and omissions" policy and refused to defend the lawsuit. Employers Reinsurance then filed a declaratory judgment action in district court seeking a declaration that it was not obligated to defend or indemnify Wilkins-Lowe. Wilkins-Lowe responded by filing a counterclaim for a declaratory judgment against Employers Reinsurance. The parties stipulated to certain facts and on the basis of these facts the district court concluded that Employers Reinsurance had a duty to defend the National Union litigation. The court reasoned that the potential liability of Wilkins-Lowe in the National Union litigation may have "arisen out of the business of rendering insurance services" because Wilkins-Lowe allowed Hall to use its name in exchange for a customer list to be used by Wilkins-Lowe to solicit insurance customers. The district court nonetheless concluded that if the suit proceeded to a judgment, Employers Reinsurance did not have a duty to indemnify Wilkins-Lowe.
 
 II. Analysis
 
 7
 We review a district court's decision on summary judgment de novo. Summary judgement is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Illinois law governs our determination. Thus, we must determine whether Employers Reinsurance had a duty to defend or indemnify Wilkins-Lowe under Illinois law. This determination is simplified given the recent decision of Crum & Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073 (Ill.1993), in which the Illinois Supreme Court reviewed and applied Illinois law concerning the duty to defend and indemnify.
 
 A. Duty to Defend
 
 8
 In Crum, the Illinois Supreme Court summarized the duty to defend stating:
 
 
 9
 It is now well-established law that, in determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action.
 
 
 10
 Id. at 1079.
 
 
 11
 Thus we must look to National Union's complaint to determine whether coverage potentially exists for the National Union litigation. In essence, National Union's complaint alleges that Wilkins-Lowe is liable to it for James Hall's wrongful conversion because Wilkins-Lowe allowed Hall to use its name. While the complaint is unclear on the actual theory of liability, on appeal, Wilkins-Lowe seems to claim that the complaint's allegations can be read to imply liability in one of three ways: (1) on a negligence theory that Wilkins-Lowe was negligent in allowing James Hall to use the name "Wilkins-Lowe"; (2) on a theory of respondeat superior; or (3) on an agency theory that Hall's use of the name "Wilkins-Lowe" gave him apparent authority to bind Wilkins-Lowe.
 
 
 12
 Wilkins-Lowe could possibly be liable on any of these theories, although we take no position on this; but the potential liability of an insured on various theories in an underlying complaint is insufficient to create a duty to defend in the insurer. Rather, a duty to defend arises only if the "facts alleged ... fall within, or potentially within, the policy's coverage provisions, ..." Crum & Forster, 620 N.E.2d at 1079. Thus we must determine the coverage afforded by the Employer Reinsurance's policy.
 
 
 13
 "In construing the scope of coverage afforded by the polic[y] before us, we initially consider the type of policy for which the parties have contracted." Crum & Forster, 620 N.E.2d at 1078. In this case, the policy at issue is a "Professional Liability Insurance Policy For Insurance Agents & Brokers." "This type of policy provides: 'a specialized and limited type of coverage as compared to comprehensive insurance; it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession.' " Crum, 620 N.E.2d at 1078 (quoting 7A J. Appleman & J. Appleman, Insurance Law & Practice Sec. 4504.01, at 310 (rev. 1979)).
 
 
 14
 Thus, under a professional liability policy, Wilkins-Lowe's coverage extends to risks inherent in the practice of selling insurance. Allowing another business--one that deals in securities--to use the name "Wilkins-Lowe" could be a decision that involves certain risks and responsibilities but it is not an activity inherent in the practice of the insurance profession. See Crum & Forster, 620 N.E.2d at 1078 ("Although there may be a myriad of risks to which one performing services in a real estate professional capacity may be exposed, covered risks are only those which inherently arise out of the rendering of the real estate services."). Moreover, for coverage under a Professional Liability Policy to exist "[t]here must be a direct, causal relationship between the insured's performance of [professional] services and the underlying claims made against the insured...." Id. at 1079. The allegations of the complaint demonstrate that there is no direct and causal relationship between Wilkins-Lowe's performance of insurance services and any of the potential claims against Wilkins-Lowe for allowing James Hall to use its name.
 
 
 15
 The Crum decision supports our conclusion. In Crum, the Illinois Supreme Court held that intentional business torts are not inherent in the practice of the real estate profession and therefore are not covered under an Professional Liability Policy. In reaching this decision, the court noted that the claims "are not made against the insureds because the insureds somehow incorrectly performed real estate services such as the listing of properties." Id. at 1079. Rather, the claims resulted from alleged unfair and tortious conduct, a risk not "inherent in the practice of the real estate profession." Id. Similarly, the claims in the National Union litigation are not made against Wilkins-Lowe because the insureds somehow incorrectly performed insurance services. Therefore, the claims do not fall within and the Professional Liability Policy's coverage.
 
 
 16
 Our discussion to this point has focused on the initial consideration of the type of policy at issue--a Professional Liability Policy. This analysis makes it clear that coverage does not exist for any of Wilkins-Lowe's liability stemming from the National Union litigation. Nonetheless, because we "must give meaning to the words used in the insurance policy[,] ... afford them their plain, ordinary meaning and apply them as written," Crum, 620 N.E.2d at 1078, our analysis continues with a focus on the policy language.
 
 
 17
 The policy at issue in this case provides coverage for "liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable, arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker...." (Emphasis added.) Thus, for coverage to exist, insurance services must be rendered to others. In its complaint, National Union does not base its claims on allegations that insurance services were provided to others. Nor does Wilkins-Lowe demonstrate that such services were provided to others. Thus, under the plain language of the insurance contract, no coverage exists.[1]
 
 B. Duty to Indemnify
 
 18
 "The duty to indemnify arises only if the facts alleged actually fall within coverage." Crum, 620 N.E. at 1081. As the above analysis demonstrates the facts alleged in the National Union complaint do not fall within coverage. Where a court concludes that no duty to defend exists, it is appropriate to also conclude that no duty to indemnify exists. Id. Accordingly, we conclude the Employers Reinsurance did not have a duty to indemnify.
 
 III. Conclusion
 
 19
 Employers Reinsurance did not have a duty to defend or a duty to indemnify Wilkins-Lowe in the National Union litigation because any liability in the litigation was not within Wilkins-Lowe's Profession Liability insurance coverage. For these and the foregoing reasons we AFFIRM the district court as to the duty to indemnify and REVERSE as to the duty to defend.
 
 
 
 [1]
 It appears that the district court, in concluding that a duty to defend existed, did not consider the requirement that the services be provided to others. This is evidenced by the district court's statement: "In sum, a comparison of the underlying complaint with the policy reveals that Wilkins-Lowe's potential liability may arise 'out of the business of the insured in rendering services,' because Wilkins-Lowe's agreement allowing Hall to use its name to sell securities was made in exchange for the supply of customers lists for its insurance business." Op. at 8-9