2019 IL App (1st) 182386

FIRST DISTRICT
SIXTH DIVISION
June 21, 2019

No. 1-18-2386

| | | |
|---|---|---|
| ILLINOIS STATE BAR ASSOCIATION MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| McNABOLA LAW GROUP, P.C., an Illinois Professional Service Corporation; MARK McNABOLA; SCOT VANDENBERG; and PATRICIA VANDENBERG, | ) ) ) ) ) | No. 18 CH 7328 |
| Defendants | ) ) | |
| (McNabola Law Group, P.C., and Mark McNabola, | ) ) | Honorable Sunjay T. Tailor, |
| Defendants-Appellees). | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Illinois State Bar Association Mutual Insurance Company (ISBA Mutual), filed an action for declaratory judgment, alleging that it had no duty to defend a motion to adjudicate an attorney's lien on behalf of defendants McNabola Law Group, P.C., and Mark McNabola (collectively, McNabola). The trial court granted judgment on the pleadings in favor of McNabola and denied ISBA Mutual's cross-motion for judgment on the pleadings. On appeal, ISBA Mutual contends that the trial court erred in granting McNabola's motion where the

motion to adjudicate an attorneys lien was not a suit seeking recovery of damages as defined in ISBA Mutual's policy issued to McNabola. For the following reasons, we reverse.

¶ 2                                    I. JURISDICTION

¶ 3     The trial court granted McNabola's motion on October 29, 2018. ISBA Mutual filed its notice of appeal on November 8, 2018. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4                                    II. BACKGROUND

¶ 5     In September 2009, Scot Vandenberg was injured when he fell from the upper deck of a yacht. McNabola represented Scot and his wife Patricia in a personal injury action filed against Brunswick Corporation (Brunswick). On February 18, 2011, McNabola served his notice of a lien, as authorized by the Attorneys Lien Act (Act) (770 ILCS 5/1 (West 2016)), on KL Gates LLP, the attorneys representing defendants. On June 9, 2015, after a three-week trial, the parties negotiated a $25 million settlement. Brunswick subsequently learned that a circuit court clerk had read McNabola a jury question prior to the settlement and moved to vacate the settlement. After a hearing, the trial court granted Brunswick's motion. The Vandenbergs discharged McNabola and current counsel appeared on their behalf and filed a motion to reconsider. After a hearing on that motion in front of a different judge, the Vandenbergs' motion was granted and the settlement was reinstated. On appeal, this court affirmed the reinstatement of the settlement in *Vandenberg v. Brunswick Corp.*, 2017 IL App (1st) 170181.

¶ 6     The Vandenbergs filed a legal malpractice action against McNabola, which ISBA Mutual is defending. The malpractice litigation is not an issue in this appeal.

¶ 7    On June 11, 2018, the Vandenbergs filed their motion to adjudicate any claimed attorneys' liens for fees/expenses. In the motion, they contended that McNabola engaged in misdeeds that resulted in the initial loss of their $25 million settlement, and to reward him with fees out of their settlement with Brunswick would be "wholly unfair and contrary to public policy." The eventual settlement was not the result of McNabola's efforts but rather was secured by present counsel in spite of McNabola's "fraudulent and unethical conduct." They argued that "Illinois law and sound public policy prohibits [*sic*] McNabola from receiving any fee" in this case. Should fees be ordered, the Vandenbergs requested that the amount they must pay "should be reduced by the amount the Vandenbergs are obligated to pay their new counsel that they were caused to hire as a result of McNabola's illegal, negligent and unethical handling of this case."

¶ 8    McNabola tendered defense of this motion to ISBA Mutual pursuant to its "Lawyers Professional Liability Insurance Claims Made and Reported Policy." The policy provided that ISBA Mutual "has the right and duty to defend any suit *** against the INSURED that seeks DAMAGES arising out of a WRONGFUL ACT." (Emphasis in original.) The policy contained the following definitions for damages and wrongful act:

"DAMAGES means all sums which an insured is legally obligated to pay for any CLAIM to which this policy applies ***. The INSURED agrees with the COMPANY that DAMAGES do not include:

***

4. legal fees, costs or expenses paid or incurred by the claimant, or retained or possessed by the INSURED whether claimed by way of restitution of specific funds, forfeiture, financial loss or otherwise, and injuries which are, in whole or part, a consequences of those fees;

***

WRONGFUL ACT means:

1. any actual or alleged negligent act, error or omission in the rendering of or failure to render PROFESSIONAL SERVICES *** committed by an INSURED in the course of rendering PROFESSIONAL SERVICES ***."

¶ 9    ISBA Mutual refused to accept defense of the motion and instead filed a complaint for declaratory judgment. In the complaint, ISBA Mutual argued that it had no duty to defend McNabola because, among other reasons, (1) the policy provided a duty to defend a suit, and the motion was not a suit, (2) there was no allegation of a negligent act on the part of McNabola, (3) the motion involved fee disputes which are not covered by the policy, and (4) the amounts sought were not "damages" as defined by the policy. McNabola answered the complaint and filed a motion for judgment on the pleadings. In the motion, McNabola argued that ISBA Mutual had a duty to defend any suit against them and that suit means "a proceeding in a court of law." McNabola also argued that the motion contained allegations of wrongful acts as defined by the policy, and alleged damages that included the necessity of hiring new counsel. ISBA Mutual filed a cross-motion for judgment on the pleadings.

¶ 10    On October 29, 2018, after a hearing on the motions, the trial court granted McNabola's motion and denied ISBA Mutual's motion. The trial court found that although styled as a motion, the underlying motion to adjudicate an attorney's lien was a complaint that "la[id] out claims of wrongdoing by Mr. McNabola in connection with his representation of the Vandenberg's [*sic*] and their lawsuit against the boat manufacturer." The court further found that the motion "does set forth a negligence theory" in requesting damages and even though other theories set forth

"may not be classified as negligence, *** all it requires is one theory *** to trigger the duty to defend." ISBA Mutual filed this timely appeal.

¶ 11                                    III. ANALYSIS

¶ 12    Like a motion for summary judgment, a motion for judgment on the pleadings "is properly granted if the pleadings disclose no genuine issue of material fact [so] that the movant is entitled to judgment as a matter of law." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). Where cross-motions for judgment on the pleadings are filed, the parties "agree that only a question of law is involved and invite the court to decide the issues based on the record." *Illinois Emcasco Insurance Co. v. Tufano*, 2016 IL App (1st) 151196, ¶ 17. The grant of judgment on the pleadings is reviewed *de novo*. *Wilson*, 237 Ill. 2d at 455.

¶ 13    An insurer has a duty to defend if the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997); *Wilson*, 237 Ill. 2d at 455. An insurer's duty to defend is broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). To determine whether an insurer has a duty to defend, we compare the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Koloms*, 177 Ill. 2d at 479. In construing the language of an insurance policy, a court's primary objective is to ascertain the parties' intent as expressed by the clear terms of the policy, given their plain and ordinary meaning. *Id.* We review the trial court's construction of terms in an insurance policy *de novo*. *Wilson*, 237 Ill. 2d at 455.

¶ 14    ISBA Mutual argues that it had no duty to defend where the underlying action was a motion to adjudicate an attorney's lien and not a formal complaint. The policy provided that

ISBA Mutual had the "duty to defend any suit *** against the INSURED." ISBA Mutual contends that the term "suit" means complaint. The policy, however, did not define "suit."

¶ 15    In *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520 (1995), our supreme court interpreted the term "suit" in an environmental investigation context. Lapham-Hickey purchased a facility that had been used in the past to treat telephone poles with preservatives. *Id.* at 523. The United States Environmental Protection Agency (EPA) determined that the operations of the facility contaminated surface and subsurface soils. *Id.* After an investigation by the Minnesota Pollution Control Agency (MPCA), Lapham-Hickey received a draft order from the MPCA, stating that there was possible groundwater contamination caused by the facility and Lapham-Hickey would be "strictly liable" for response costs and damages. *Id.* at 524. The proposed order also required Lapham-Hickey to commence a remedial investigation and feasibility study of the facility. *Id.* Lapham-Hickey entered into negotiations with the MPCA and hired environmental consultants to investigate. A report submitted after the investigation confirmed the existence of contamination. *Id.* at 524-25.

¶ 16    Lapham-Hickey possessed an insurance policy issued by Protection Mutual Insurance Company (Protection) that covered "all risks of physical loss or damage" to the property. The policy provided that Protection " 'agrees to defend any suit against the Insured alleging liability for such damage *** even if such suit is groundless, false or fraudulent.' " *Id.* at 528.

¶ 17    Pursuant to that policy, Lapham-Hickey filed a declaratory judgment and breach of contract action against Protection, alleging that Protection breached its duty to defend and must reimburse Lapham-Hickey for the costs of its investigation. *Id.* at 525. Both parties filed cross-motions for summary judgment. Protection argued that it did not owe Lapham-Hickey a duty to defend because the policy required a defense against "suits" only, and no suit had been

filed against Lapham-Hickey. *Id.* at 529. Lapham-Hickey argued that although no suit had been filed against it, the MCPA's draft order represented a threat of legal action sufficient to constitute a "suit." *Id.*

¶ 18    Our supreme court noted that "[t]he issue of when a 'suit' exists in an environmental context is one of first impression before this court." *Id.* at 530. The court found the word "suit" unambiguous which, given its plain meaning, "refers to a proceeding in a court of law." *Id.* at 531. The word "connote[s] an attempt to gain the resolution of an issue within the court system." *Id.* at 532. Since a suit "requir[es] an action in a court of law," Protection's duty to defend is not triggered where the allegations or claims "have not been embodied within the context of a complaint." *Id.* Although the MCPA's draft order and documents may have had a confrontational tone, nothing was filed in a court of law. "Without a complaint, there is no 'suit.' And without a 'suit,' Protection's duty to defend Lapham-Hickey is not triggered." *Id.*

¶ 19    In *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127 (1999), the court reiterated its holding in *Lapham-Hickey*. In *Ehlco*, also an environmental contamination case, the EPA filed suits against the insured, seeking an injunction and reimbursement for sums expended for environmental investigations at two of the insured's sites. *Id.* at 133. The parties executed a consent decree regarding one of the affected sites, wherein the insured agreed to finance and conduct certain environmental response actions, and to reimburse the EPA. *Id.* at 133-34. Plaintiff had issued a policy providing that the insurer " 'shall have the right and duty to defend any suit against the insured seeking damages on account of [covered] *** property damage.' " *Id.* at 131.

¶ 20    The question before the supreme court was whether the insurer had a duty to defend a suit where one party's liability "is a foregone conclusion by reason of a previously executed consent

decree." *Id.* at 141. The court found that "*Lapham-Hickey* established a bright-line test for determining when a 'suit' exists in this context. 'Suit' 'refers to a proceeding in a court of law' and requires a complaint." *Id.* at 140 (quoting *Lapham-Hickey*, 166 Ill. 2d at 531-32). Even though the parties entered into a consent decree, the EPA's filing constituted a "suit" under the policy "because it was a proceeding in a court of law, and it was instituted with a complaint." *Id.* at 140-41.

¶ 21 Citing *Lapham-Hickey* and *Ehlco*, ISBA Mutual argues that the word "suit" means the same as a formal complaint. While our supreme court determined *Lapham-Hickey* and *Ehlco* based on whether a complaint had been filed against the insured, it did so within the context of an insured's liability for environmental contamination. As detailed in those cases, a party may be liable and incur costs pursuant to investigations and orders not filed in a court of law.

¶ 22 Regarding an insurer's duty to defend, however, the supreme court found that the term "suit" in the policy plainly "connote[s] an attempt to gain the resolution of an issue within the court system." *Lapham-Hickey*, 166 Ill. 2d at 532. Therefore, both cases held that in an environmental contamination context, where the EPA or other agency may allege an insured's liability in a coercive letter, the insurer's duty to defend is not triggered unless those allegations were made in a complaint filed in court. Contrary to ISBA Mutual's contention, the supreme court did not equate the word "suit" with a formal complaint outside the specific facts of the cases before it. Rather, the court found that "[t]he primary attribute of a suit is that the parties to the action are involved in actual court proceedings." *Id.* We recognize that in most cases a "suit" will be a complaint, but under the supreme court's definition, the term may also apply to petitions and other court filings. We decline to give the term, on its own, a more limited construction.

¶ 23    Here, the underlying motion to adjudicate an attorney's lien seeks resolution of an issue in an actual court proceeding. However, even if we find that it is a suit, our inquiry does not end there. Courts must construe insurance policies "as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). ISBA Mutual issued to McNabola a "Lawyers Professional Liability Insurance Claims Made and Reported Policy." Although the policy did not define "suit," it did state that the duty to defend attaches to "any suit *** against the insured that seeks DAMAGES arising out of a WRONGFUL ACT," as those terms are defined in the policy. Therefore, to determine whether ISBA Mutual had a duty to defend McNabola, we consider whether the motion to adjudicate an attorney's lien is a suit that seeks "sums which an insured is legally obligated to pay" arising out of "any actual or alleged negligent act, error or omission in the rendering of or failure to render PROFESSIONAL SERVICES."

¶ 24    Negligence in a legal malpractice action involves an attorney's breach of his duty to represent his client in a prior case, and the analysis of damages for such negligence is governed by the "attorney's conduct and its consequences." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 261-62 (2006). The injury suffered is not a personal injury or the attorney's negligent act itself. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). "Rather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission." *Id.* In other words, a client must demonstrate that he or she has sustained a monetary loss proximately resulting from the attorney's negligent

conduct. *Id.* at 306-07. A petition to adjudicate an attorney's lien, however, seeks no such damages.

¶ 25     The Act provides that "[a]ttorneys at law shall have a lien upon all claims, demands and causes of action *** which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee" for services rendered. 770 ILCS 5/1 (West 2016). To enforce the lien, such attorneys "shall serve notice in writing" and "[o]n petition filed by such attorneys or their clients any court of competent jurisdiction shall *** adjudicate the rights of the parties and enforce the lien." *Id.* In filing the petition, the claimants seek only adjudication of their respective rights to a settlement. *Moenning v. Union Pacific R.R. Co.*, 2012 IL App (1st) 101866, ¶ 18.

¶ 26     An attorney's lien under the Act " 'is a lien upon the proceeds, only, of the litigation or settlement of the claim.' " *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 97 (2001) (quoting *Baker v. Baker*, 258 Ill. 418, 421 (1913)). By serving notice of the lien, the attorney effectively becomes a joint claimant with his client in the proceeds of any settlement "and to the extent of the amount of his fee has the same interest in such proceeds *** as his client and is entitled to his *pro rata* share thereof." (Internal quotation marks omitted.) *Id.* at 97-98. A proceeding under the Act therefore establishes a lien and an attorney's right to it. *Id.* at 95. Nothing in the statute authorizes a wronged client to seek compensatory damages for an attorney's misdeeds. Although the client may allege misdeeds on the part of the attorney, and the court may hear evidence as to the services rendered by the attorney, the client does not seek to recover for a monetary loss directly resulting from the misconduct. Rather, the client is disputing the attorney's claimed right to the lien. *Moenning*, 2012 IL App (1st) 101866, ¶ 29. The underlying motion to adjudicate an attorney's lien illustrates this point.

¶ 27 In their motion, the Vandenbergs alleged that McNabola "motivated by greed plac[ed] his interests above those of his clients throughout his representation." It set forth the details and extent of the alleged misconduct and the fact that the Vandenbergs discharged McNabola and hired present counsel after initially losing the $25 million settlement. The relief they requested, however, was not compensation for the monetary loss they suffered due to McNabola's malpractice. Rather, the Vandenbergs asked the court to "discharge any lien asserted by McNabola and/or Anders and find that they are not entitled to recovery out of Plaintiffs' settlement with the Brunswick Defendants." They argued that McNabola "should be disqualified from receiving any further recovery out of the Vandenbergs [*sic*] settlement which he alone placed in jeopardy through service toward his own self-interest." The motion alternatively requested that should McNabola receive a portion of the settlement due to the lien, his amount "should be reduced by the amount the Vandenbergs are obligated to pay their new counsel" as a result of his mishandling of their case. This alternative request, however, is not one for payment of compensatory damages. Evidence regarding the services rendered by the attorney is relevant to adjudicating his rights to the settlement and enforcing any liens. *Id.* ¶ 19. The fact that the motion never sought actual payment from McNabola for damages resulting from his misconduct further supports this conclusion.

¶ 28 McNabola argues, however, that the Vandenbergs requested not only the discharge of his claimed lien on the settlement proceeds, but also requested "further relief as this Honorable Court deems appropriate herein" in their motion. He argues that such a request indicates the Vandenbergs sought compensatory damages as well as the discharge of McNabola's lien, citing *B.H. Smith, Inc. v Zurich Insurance Co.*, 285 Ill. App. 3d 536 (1996), and *Country Mutual Insurance Co. v. Bible Pork, Inc.*, 2015 IL App (5th) 140211, as support. In both cases, however,

a complaint was filed against the insured. Although the plaintiff did not specifically request compensatory damages, such relief was available for the claim. Here, the motion to adjudicate an attorney's lien did not seek to impose liability on McNabola for damages due to his misconduct. In fact, the Vandenbergs filed a separate malpractice action against him for such damages, which ISBA Mutual is defending pursuant to its policy. As we explained above, a proceeding under the Act establishes an attorney's lien and adjudicates his right to enforce it. The statute contains no provision for compensatory damages. *B.H. Smith* and *Country Mutual* are distinguishable.

¶ 29     We find that the underlying motion did not seek damages arising from wrongful conduct as defined in the malpractice policy and contemplated by the parties. Accordingly, ISBA Mutual had no duty to defend McNabola against the Vandenbergs' motion to adjudicate an attorney's lien, and the trial court's finding to the contrary was error.

¶ 30                                  IV. CONCLUSION

¶ 31     For the foregoing reasons, the judgment of the circuit court is reversed.

¶ 32     Reversed.